EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: Héctor L. Ayala Vega | 2013 TSPR 117 189 DPR ____ |
|---|---|

Número del Caso: CP-2011-14

Fecha: 10 de octubre de 2013

Abogados de la Parte Querellada:

Lcdo. Guillermo Figueroa Prieto
Lcdo. Mario Rodríguez Torres

Oficina del Procurador General:

Lcdo. Luis Román Negrón
Procurador General

Lcda. Edna E. Rodríguez Benítez
Procuradora General Auxiliar

Lcda. Yaizamarie Lugo Fontanet
Procuradora General Auxiliar

Lcda. Miriam Álvarez Archilla
Procuradora General Auxiliar

Comisionada Especial:

Hon. Crisanta González Seda

Materia: Conducta Profesional – La suspensión será efectiva el 17 de octubre de 2013, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Héctor L. Ayala Vega                    CP-2011-014

PER CURIAM

San Juan, Puerto Rico, a  10 de octubre de 2013.

El Lcdo. Héctor L. Ayala Vega fue admitido al ejercicio de la abogacía el 26 de junio de 1985 y a la práctica de la notaría el 25 de marzo de 1986. El 29 de junio de 1990 renunció de forma voluntaria a la práctica de la notaría y fue posteriormente readmitido como notario el 13 de junio de 1991.

Mientras se desempeñó como abogado, el licenciado Ayala Vega representó al Sr. Juan Alexis Vázquez Pérez (Vázquez Pérez) durante un procedimiento criminal. Por las actuaciones realizadas durante ese proceso, el Sr. Juan C. Vázquez Pérez (quejoso), hermano del señor Vázquez Pérez, presentó para el 2007

una queja (Queja No. 2007-034) ante la Oficina del Procurador General por alegadas violaciones a los Cánones de Ética Profesional, 4 L.P.R.A. Ap. IX.[1]

El quejoso sostuvo que contrató a la señora Ana L. Vega Morales para representar a su hermano en un caso de violencia doméstica.[2] Ésta no pudo continuar la representación legal, por lo que lo refirió al licenciado Ayala Vega. El quejoso sostuvo que el letrado, quien es primo de un hijo de la perjudicada, fue negligente durante la representación legal de su hermano, el señor Vázquez Pérez, y no tramitó una apelación criminal a pesar de habérsele pagado un adelanto para ello. Esta queja fue archivada por la Oficina del Procurador General, conforme surge de la carta del 1 de agosto de 2007.

Inconforme con el archivo de su queja, el quejoso acudió ante esta Curia. Como consecuencia, el asunto fue referido a la Comisión de Ética del Colegio de Abogados de Puerto Rico. Esa Comisión presentó el 20 de abril de 2010 un *Informe de Investigación* en el que recomendó archivar la queja presentada por el quejoso. De éste surge que el letrado remitió al quejoso un cheque por $1,961.70 a favor

---

[1] El quejoso buscó la representación legal de su hermano, costeó la misma, estuvo estrechamente involucrado con los trámites legales y era informado sobre los pormenores del caso.

[2] La señora Ana L. Vega Morales fue suspendida indefinidamente del ejercicio de la abogacía y la notaría el 17 de marzo de 2006. Véase, In re Vega Morales, 167 D.P.R. 331 (2006).

del señor Vázquez Pérez, por concepto de devolución de honorarios no devengados.[3]

El 17 de mayo de 2010 el quejoso objetó el *Informe de Investigación*. Al así hacerlo, acompañó una certificación del Tribunal de Apelaciones de la cual surge que el licenciado Ayala Vega no presentó un recurso de apelación como acordado. Posterior al examen de las expresiones del quejoso, el 4 de junio de 2010 este Tribunal refirió el asunto para investigación a la Oficina del Procurador General. El 24 de marzo de 2011 la Oficina del Procurador General emitió un detallado informe sobre los pormenores de la queja presentada.

Del informe emitido por la Oficina del Procurador General surge que, luego de escuchar los procedimientos durante el juicio, no existe prueba alguna para concluir que el letrado no defendió diligentemente a su cliente por la relación lejana con la perjudicada. Sin embargo, la Oficina del Procurador General sostuvo que el licenciado Ayala Vega incurrió en conducta violatoria de los Cánones del Código de Ética Profesional, *supra*.

Específicamente, la Oficina del Procurador General señaló que el licenciado Ayala Vega cobró al quejoso por presentar una apelación que no perfeccionó conforme a derecho y cuyo dinero no fue devuelto inmediatamente. El letrado invocó que desistió de la apelación y presentó una

_____

[3]El cheque fue emitido el 28 de junio de 2009. Éste no fue canjeado y el mismo fue anejado en la comparecencia del 19 de agosto de 2009 que hiciera el quejoso ante este Tribunal.

moción para solicitar la rebaja de la sentencia impuesta. Sin embargo, nunca presentó la referida moción. Por estas actuaciones, la Oficina del Procurador General entendió que el licenciado Ayala Vega pudo incurrir en violación a los Cánones 18, 20, 23, 35 y 38 de los Cánones de Ética Profesional, *supra*. De igual forma, señaló que si el letrado permitió el pago de honorarios de abogado a la señora Vega Morales, luego de su desaforo, pudo incurrir en violación a los Cánones 33 y 38 de los Cánones de Ética Profesional, *supra*. En su informe la Oficina del Procurador General resaltó una moción intitulada *Moción Urgente Solicitando Permiso para Regrabar* presentada ante el Tribunal de Primera Instancia por el abogado en la cual alude incorrectamente a una apelación ante esta Curia, por lo que entiende que éste realizó una representación falsa constituyéndose una violación al Canon 35 del Código de Ética Profesional, *supra*.

El letrado presentó sus contenciones al informe emitido por la Oficina del Procurador General. En primer lugar, indicó que el no continuar con el trámite apelativo de un caso no significa que sea incompetente. Señaló que las partes seleccionaron una estrategia de litigio que no prosperó. En cuanto a la *Moción Urgente Solicitando Permiso para Regrabar*, arguyó que la solicitud de regrabación estaba relacionada con la queja presentada por el quejoso, por lo que ello constituye un simple error al redactar el escrito. En torno a la devolución de honorarios, el licenciado Ayala Vega sostuvo que el pago

recibido no fue en adelanto de honorarios para apelación, sino por la devolución de gastos incurridos en copias y transcripciones de los incidentes relacionados a una reconsideración presentada en el caso del señor Vázquez Pérez, por lo que solamente los devolvió en un acto de buena fe. Por último, el letrado sostuvo que desconocía que el quejoso estuviese realizando pagos a favor de la señora Vega Morales y que no existe algún hecho independiente que pueda constituir una violación al Canon 38 del Código de Ética Profesional, *supra*.

Atendidos los escritos presentados, el 22 de julio de 2011 instruimos a la Oficina del Procurador General a presentar la querella correspondiente. La querella fue presentada el 14 de noviembre de 2011 con cargos por violación a los Cánones 18, 20, 23, 33, 35 y 38 del Código de Ética Profesional, *supra*. El licenciado Ayala Vega contestó y negó los cargos imputados en la querella.

El 6 de junio de 2012, con la aprobación de este Tribunal, la querella fue enmendada para incluir un cargo adicional por violación al Canon 35 del Código de Ética Profesional, *supra*, debido a alegadas inconsistencias en los testimonios del togado, con relación al cobro de los $1,961.70. Los trámites fueron asignados a una Comisionada Especial, quien recibió prueba y rindió el respectivo informe el 3 de abril de 2013.

La Comisionada Especial, Lcda. Crisanta González Seda, hizo un recuento de los procesos acaecidos durante el trámite de la querella. Con relación a los cargos

presentados, determinó que el letrado instruyó al quejoso a pagar el 18 de mayo de 2006 la cantidad de $400 a la señora Vega Morales. Del informe presentado surge que la Comisionada Especial precisó que el quejoso y el abogado acordaron presentar una apelación ante el Tribunal de Apelaciones con relación a la causa criminal en la que fue hallado culpable el hermano del quejoso. Para ello, pactaron honorarios de $5,000, de los cuales el quejoso adelantó $1,961.70. La Comisionada Especial concluyó que la referida suma fue por el pago de apelación y descartó que ello respondiera, como alegó en ocasiones el abogado, a un reembolso por los gastos incurridos en un alegado trámite de reconsideración. El adelanto pagado fue devuelto en el 2009. Además, la Comisionada Especial precisó que mediante moción del 3 de diciembre de 2007, el licenciado Ayala Vega solicitó al Tribunal de Primera Instancia regrabar los procedimientos. Al así hacerlo, aseveró que: "[e]n el caso de epígrafe hemos radicado una apelación en el Tribunal Supremo y por esto estamos solicitando la regrabación de los procedimientos del juicio del 5 de julio de 2006…". Véase, *Moción Urgente Solicitando Permiso para Regrabar*, presentada ante el Tribunal de Primera Instancia el 3 de diciembre de 2007.

Acto seguido, y luego de una exposición del derecho aplicable, la Comisionada Especial razonó que los hechos expuestos denotan que el licenciado Ayala Vega incurrió en las violaciones imputadas a los Cánones de Ética Profesional, *supra*.

Las partes no objetaron el informe de la Comisionada Especial, por lo que el caso quedó sometido el 2 de agosto de 2013.[4] Examinados los hechos ante nuestra consideración, estamos en posición de resolver.

_____

[4]El informe de la Comisionada Especial fue notificado el 3 de abril de 2013 y luego mediante una notificación enmendada para corregir un error en la notificación el 1 de mayo de 2013. Desde ese momento comenzó a decursar el término simultáneo de 20 días que tienen las partes para ofrecer sus comentarios u objeciones, y sus recomendaciones, en cuanto a la acción que deba tomar el Tribunal. Transcurrido el referido término, el tribunal resolverá lo que proceda en derecho. Véase, Regla 14(l) y (m) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-B R. 14 (l) y (m).

El 17 de abril de 2013, el licenciado Ayala Vega solicitó la regrabación de los procedimientos. Mediante Resolución de 28 de mayo de 2013 autorizamos la regrabación solicitada. El 1 de junio de 2013 el licenciado Ayala Vega consignó el arancel necesario. Transcurridos dos meses, el 2 de agosto de 2013 este Tribunal dio por sometido el caso para su adjudicación. Sin embargo, el 9 de agosto de 2013, mediante *Moción Solicitando Remedio* el licenciado Ayala Vega solicita, **por primera vez**, que el término para presentar sus objeciones y comentarios al informe se compute desde que se presente la transcripción. El 21 de agosto de 2013 presentó la referida transcripción. El 27 de agosto de 2013 la Oficina del Procurador General se opuso mediante *Oposición a moción sometiendo transcripción de vista.* Luego, el 10 de septiembre de 2013, el licenciado Ayala Vega presentó sus objeciones al informe de la Comisionada Especial. El Procurador General solicitó el desglose de tal escrito, a lo que se opuso el letrado

La *Moción Solicitando Remedio*, presentada el 9 de agosto de 2013 y la *Moción Sometiendo Transcripción de la Vista Oral* presentada el 21 de agosto de 2013 y las objeciones y recomendaciones en torno al informe de la Comisionada Especial, presentadas el 10 de septiembre de 2013, por el licenciado Ayala Vega fueron presentadas en exceso al término para objetar el informe de la Comisionada Especial y luego de que el caso quedara sometido para su resolución, por lo que ambas mociones se declaran no ha lugar. Por tanto, no consideraremos la transcripción presentada ni las objeciones y recomendaciones. Véase, In re Comas, Rosado, 180 D.P.R. 143 (2010).

I

Al licenciado Ayala Vega se le imputa haber violado los Cánones 18, 20, 23, 33, 35 y 38 del Código de Ética Profesional, *supra*. Veamos si incurrió en las alegadas violaciones.

El Canon 18 del Código de Ética Profesional, *supra*, impone al abogado el deber de desempeñarse en su representación de forma competente, capaz y diligente. De igual manera, obliga al abogado a defender los intereses de su cliente con el más profundo saber y habilidad, por lo que sus actuaciones deben ser adecuadas y responsables para la profesión jurídica general. In re Rivera Ramos, 178 D.P.R. 651, 664 (2010); In re Pereira Esteves, 131 D.P.R. 515, 522 (1992). Una infracción a este canon perjudica directamente los intereses del cliente. Por ello, la ética profesional le exige al abogado un conocimiento vasto sobre las normas jurídicas y que actúe en consecuencia. Así, incurre en una violación ética aquel abogado que atiende indebidamente la causa que le fue encomendada. R. L. Vigo, Ética del abogado; conducta procesal indebida, 2da ed. Buenos Aires, Ed. Lexis Nexis, Abelledo-Perrot, 2003 pág. 103. El letrado falta a su deber de diligencia cuando no realiza las gestiones que le fueron encomendadas en el momento oportuno, de la forma adecuada y sin retrasos. S. Steidel Figueroa, Ética y Responsabilidad del Abogado, San Juan, Pubs. J.T.S., 2010, pág. 179; In re Vilches López, 170 D.P.R. 793, 798 (2007).

De otra parte, la importancia de mantener la confianza en la profesión legal sobre los asuntos económicos de un representado es de gran relevancia. A estos efectos, el Canon 20 del Código de Ética Profesional, *supra*, establece el procedimiento que debe seguir un abogado al renunciar a la representación legal que ostenta, lo cual incluye el deber de reembolsar inmediatamente cualquier cantidad que se haya pagado por adelanto en honorarios por servicios que no se han prestado. Canon 20 del Código de Ética Profesional, *supra*; In re Rodríguez Lugo, 175 D.P.R. 1023, 1030-1031 (2009). En igual medida, el Canon 23 del Código de Ética Profesional, *supra*, requiere al abogado que dé pronta cuenta del dinero u otros bienes del cliente y no mezclarlos con los propios. In re Ríos Ríos, 175 D.P.R. 57, 72-73 (2008). Así, la retención de cualquier cantidad de dinero, perteneciente a su cliente que esté en posesión del abogado trastoca e infringe los postulados del Canon 23 del Código de Ética Profesional, *supra*. In re Rivera Lozada, 176 D.P.R. 215, 225 (2009).

El solo hecho de que el togado retenga fondos pertenecientes a un cliente justifica una sanción disciplinaria independientemente de si el abogado devolvió tal dinero y que su retención hubiere sido sin la intención de apropiárselos. In re Vega Quintana, res. 29 de mayo de 2013, 2013 T.S.P.R. 62, 188 D.P.R.___; In re Ríos Ríos, *supra*, pág. 73; In re Rivera Irizarry, 155 D.P.R. 687, 693 (2001). Por ello, constituye un grave atentado a la relación fiduciaria que el abogado retenga

una suma de dinero que le adelantó su representado en concepto de honorarios sin realizar la gestión a la cual se comprometió. In re Torres Viñals, 180 D.P.R. 236, 246 (2010); In re Ramírez Ferrer, 147 D.P.R. 607, 614 (1999).

Como es sabido, el ejercer la profesión de abogado constituye un gran privilegio que conlleva unas responsabilidades. Ante ello, el Canon 33 del Código de Ética Profesional, *supra*, impone a todo abogado el deber de evitar "que personas no autorizadas practiquen la abogacía o la notaría". Canon 33 del Código de Ética Profesional, *supra*. Además, el canon claramente dispone que es impropio de un abogado el "permitir o facilitar a una persona o entidad que no esté autorizada a ejercer la abogacía o el notariado que cobre total o parcialmente por los servicios profesionales o notariales prestados por el abogado". Íd. A tenor con ello, este Tribunal enfáticamente ha expresado que incurre en conducta violatoria al Canon 33 del Código de Ética Profesional, *supra*, aquel **"jurista que comparte sus honorarios con una persona que no es abogado"**. In re Franco Rivera, 169 D.P.R. 237, 271 (2006). Véase, además, In re Rochet Santoro, 174 D.P.R. 123, 133-134 (2008).

Con relación al Canon 35 del Código de Ética Profesional, *supra*, y en lo pertinente, éste impone a cualquier miembro de la profesión legal actuar con sinceridad y honradez. Ello, incluye que el abogado se ajuste a la franqueza de los hechos al redactar documentos y presentar sus causas. No es sincero y honrado utilizar

medios que sean inconsecuentes con la verdad. In re Rochet Santoro, *supra*, pág. 137; In re Marini Román, 165 D.P.R. 801, 807 (2005). Tampoco se debe inducir a error mediante la utilización de artificios o de una falsa relación de hechos o Derecho. Por ende, el abogado que provee al tribunal información falsa o que no se ajuste a la verdad incumple con este canon. In re Nieves Nieves, 181 D.P.R. 25, 41-42 (2011); In re Zapata Torres, 176 D.P.R. 545, 554 (2009). No es defensa a la inobservancia de este compromiso el que no se haya obrado de mala fe, deliberadamente o sin intención de engañar. In re Rosado Nieves, res. 10 de julio de 2013, 2013 T.S.P.R. 92, 189 D.P.R.___; In re Muñoz Fernós, 184 D.P.R. 679, 686-687 (2012). Lo fundamental es que se falte a los valores de honradez y veracidad, pilares de la profesión legal. In re Nieves Nieves, *supra*, pág. 43; In re Astacio Caraballo, 149 D.P.R. 790, 799 (1999).

Por último, el Canon 38 del Código de Ética Profesional, *supra*, "preceptúa una máxima de suma importancia para el ordenamiento deontológico de la profesión legal". In re Báez Genoval, 175 D.P.R. 28, 38 (2008). Concretamente, este canon enfatiza los valores principales que deben prevalecer al ejercer la profesión de la abogacía: la dignidad y el honor. Con relación a este canon, hemos establecido que "[l]a justicia debe ser inmaculada, tanto en su realidad interior como en la percepción externa.... Cuando la conducta que se le imputa a un abogado demuestra que no se conduce de forma digna y

honorable, viola el citado Canon 38". In re Pons Fontana, 182 D.P.R. 300, 310 (2011). Todos los miembros de nuestra profesión deben estar en una constante introspección, analizando que su conducta sea armoniosa con la responsabilidad ética y moral que permea el ejercicio de la abogacía. "[L]os abogados son el espejo donde se refleja la imagen de la profesión. Por tal razón, estos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen". In re Nieves Nieves, supra, pág. 45. Véase, In re Gordon Menéndez, 183 D.P.R. 628, 642-643 (2011).

II

Nos corresponde determinar si el licenciado Ayala Vega incurrió en las violaciones imputadas. A la luz de los hechos determinados por la Comisionada Especial y el examen del expediente ante nuestra consideración, no albergamos duda de que el letrado infringió los Cánones 18, 20, 23, 33, 35 y 38 del Código de Ética Profesional, supra.[5]

El quejoso contrató los servicios del letrado para que representara a su hermano durante un proceso criminal por razón de que la señora Vega Morales no podía continuar con la representación legal que ostentaba. Así las cosas, el

---

[5]Reiteradamente hemos expresado que las determinaciones de hecho que haga un Comisionado Especial en un procedimiento disciplinario merecen nuestra deferencia. Consecuentemente, no alteramos éstas a menos que medie pasión, prejuicio, parcialidad o error manifiesto en su apreciación de la prueba. In re Soto Charraire, 186 D.P.R. 1019 (2012); In re Muñoz, Morell, 182 D.P.R. 738, 749-750 (2011).

letrado compareció ante el foro de instancia como abogado del hermano del quejoso en una causa criminal. Alegó que no cobró honorarios y que lo único que recibió fue una suma para la presentación de una apelación. Durante ese proceso, y conforme los hechos probados y no rebatidos, el letrado instruyó al quejoso a pagar dinero a la señora Vega Morales, quien no estaba autorizada a ejercer la abogacía. El quejoso actuó conforme a lo instruido y pagó a la señora Vega Morales al finalizar las comparecencias que el letrado hiciera en la representación de su hermano. Al así actuar, el licenciado Ayala Vega violó el Canon 33 del Código de Ética Profesional, *supra*, ya que compartió honorarios con una persona que no era abogado.

De otra parte, y aunque la Comisionada Especial entendió que las gestiones realizadas beneficiaron al imputado durante los procedimientos, ésta determinó que el quejoso y el abogado acordaron presentar una apelación por el caso en el cual su hermano fue hallado culpable, la cual no fue presentada. Indicó, que el licenciado Ayala Vega y el quejoso pactaron $5,000 en honorarios. El letrado solicitó al quejoso un adelanto por $1,961.70, los cuales fueron pagados. A pesar de lo acordado, el 31 de octubre de 2006, el licenciado Ayala Vega se limitó a presentar la apelación ante el Tribunal de Primera Instancia, Sala Superior de Guayama. El letrado nunca gestionó un trámite posterior en cuanto a la apelación como tampoco la notificó al Tribunal de Apelaciones. Por tanto, la apelación nunca se perfeccionó conforme a

derecho. Además, no informó sobre este hecho al quejoso ni a su representado. A solicitud del quejoso, el Tribunal de Apelaciones expidió una certificación el 12 de febrero de 2009 de la que se desprende que nunca se presentó recurso alguno ante ese foro.

Como consecuencia del trámite inoficioso realizado, el señor Vázquez Pérez no pudo ejercer su derecho y deseo de revisar la sentencia impuesta, la cual advino final y firme. En su defensa, el licenciado Ayala Vega alegó que la falta de notificación al foro intermedio fue parte de una estrategia de litigio para conseguir una rebaja de la pena impuesta. Señaló que las partes acordaron solicitar una reconsideración ante el foro primario y que desistieron de la apelación presentada. Sin embargo, los acontecimientos acaecidos reflejan lo contrario y no sostienen lo alegado.

La prueba examinada demuestra que el letrado nunca solicitó una reconsideración para rebaja de la pena impuesta posterior a dictada la sentencia o presentada la apelación.[6] Tampoco realizó trámite alguno que sostuviera

---

[6] De las minutas relacionadas surge que el señor Vázquez Pérez fue hallado culpable el 5 de julio de 2006. En ese momento, el licenciado Ayala Vega solicitó que se le permitiera presentar reconsideración al fallo. El Tribunal accedió y señaló el acto para dictar la sentencia para el 23 de agosto de 2006. Véase, Minuta del 5 de julio de 2006 en el caso criminal GLE2006G0139. En esa fecha, el letrado señaló que presentó una moción de reconsideración, la cual no se había unido al expediente. Así, solicitó un término para producir copia de ésta. Véase, Minuta del 23 de agosto de 2006 en el caso criminal GLE2006G0139. Contrario a lo expresado en sala, el licenciado no había presentado la moción de reconsideración. Ésta fue presentada el 30 de agosto de 2006. Al día siguiente, el

sus alegaciones en cuanto a que ello era parte de una estrategia de litigio. Más aún, el licenciado Ayala Vega desplegó una conducta deshonrosa. En un principio el letrado afirmó ante este Tribunal, y con relación a la queja, haber presentado la apelación, según solicitada y sostuvo osadamente que el quejoso faltaba a la verdad al indicar que: "[l]a apelación se hizo; el tribunal de apelaciones tiene el caso ante su consideración…" Véase, Carta del 21 de noviembre de 2007 del licenciado Ayala Vega ante este Tribunal. Igualmente, indujo a la creencia de que había cumplido con lo acordado cuando el 15 de julio de 2009 afirmó ante la Comisión de Ética del Colegio de Abogados que: "[e]n este caso, luego de haber recibido el adelanto de $1,961.70 de la suma de $5,000 pactada por la apelación, el licenciado Ayala Vega presentó el escrito de apelación en la Secretaría del Tribunal de Guayama el 31 de octubre de 2006". Sin embargo, luego argumentó que la apelación nunca se perfeccionó como parte de una estrategia de litigio. La conducta mendaz del letrado incluyó las aseveraciones con relación al adelanto de dinero pagado por el quejoso. Por una parte, el letrado manifestó que el dinero constituyó un anticipo para presentar la apelación, y por otra, que la cantidad pagada fue un reembolso por gastos incurridos relacionados a una reconsideración de la sentencia impuesta contra el hermano

---

foro primario la declaró no ha lugar y dictó la sentencia el 2 de octubre de 2006.

del quejoso.[7] No obstante, no existe prueba alguna de que el letrado haya presentado la referida reconsideración.

Esa misma conducta fue desplegada ante el Tribunal de Primera Instancia cuando el 3 de diciembre de 2007 el licenciado Ayala Vega presentó una *Moción urgente*

---

[7]Véase, la *Réplica a Informe de la Procuradora General* de 20 de junio de 2011 en la que el licenciado Ayala Vega indicó que:

> [L]a reconsideración se argumentó el 31 de agosto de 2006 y el pago de $1,961.70 se hizo el 11 de septiembre de 2006, antes de que se dictara sentencia el 2 de octubre de 2006. **No es razonable que un pago realizado el 11 de septiembre de 2006 pueda constituir un adelanto de pago de honorarios por una apelación que no surge hasta el 2 de octubre de 2006 cuando se dictó la sentencia que ordenó reclusión por cuatro años.** Lo razonable es concluir que el pago se refería al reembolso de gastos relacionados con la reconsideración.
>
> **Por tratarse de gastos y no de honorarios, el licenciado Ayala Vega, no estaba en la obligación de devolver los $1,961.70 al hermano del acusado. Sólo lo hizo por recomendación de su abogado con la intención de que se viera la buena fe del licenciado Ayala Vega y que incluso estaba dispuesto a renunciar a su derecho al reembolso de gastos incurridos en aras de terminar cualquier controversia con el señor Vázquez Pérez.** (Énfasis suplido.).

Igual argumento sostuvo en su *Contestación a Querella* del 23 de noviembre de 2011 cuando indicó que: "la cantidad de $1,961.70 pagada por el hermano del acusado no fue un adelanto de honorarios para la apelación, **sino el pago de gastos incurridos en copias y transcripciones de vistas de los incidentes ante el TPI relacionados con la reconsideración**". (Énfasis suplido.).

El licenciado Ayala Vega olvidó que en su contestación de 18 de febrero de 2011 al interrogatorio cursado por la Oficina del Procurador General expuso que: "**[l]o único que recibí para la Apelación fue un pronto de $1,961.70 de los $5,000 dólares que siempre [es] lo mínimo que siempre [sic] he facturado por una apelación…**". (Énfasis suplido.).

*solicitando permiso para regrabar*, en la cual informó que "hemos radicado una apelación ante el Tribunal Supremo" y por eso solicitaba la grabación de los procedimientos. El letrado aduce que ello consistió en un error y que la solicitud fue como consecuencia de la queja presentada por el quejoso. El hábito demostrado nos lleva a concluir lo contrario.

Ciertamente, las manifestaciones del togado constituyen una falsa relación de hechos con la intención de justificar sus actuaciones ante la querella presentada. De esta forma, el licenciado Ayala Vega actuó de forma deshonrosa con la única finalidad de salvar su causa. Por un lado aseguró haber cumplido con la encomienda encargada, mientras, a su vez, sostenía que acordó la presentación de una reconsideración que nunca hizo. Igualmente, defendió la retención del dinero adelantado como parte de la presentación del recurso apelativo realizado para luego sostener que constituyó la devolución de gastos incurridos por el trámite de la alegada reconsideración postsentencia. Las versiones del licenciado Ayala Vega resultan incompatibles con sus propias expresiones y con la prueba presentada.

Por último, el letrado retuvo los $1,961.70 adelantados por el quejoso y no fue hasta el 2009 que el licenciado Ayala Vega los devolvió e indicó que: "[e]n señal de buena fe se incluye un cheque por $1,961.70 a favor de Juan Alexis Vázquez Pérez en concepto de devolución de honorarios profesionales no devengados".

Véase, misiva del 15 de julio de 2009 ante la Comisión de Ética del Colegio de Abogados.

No cabe duda de que el licenciado Ayala Vega dejó de actuar de forma capaz, competente y diligente al no interponer el recurso de apelación acordado o gestión alguna con el propósito de suplicar una rebaja a la pena impuesta. Ante ello, incurrió en la infracción al Canon 18 del Código de Ética Profesional, *supra*. Además, el examen detenido de los hechos refleja con certeza que el licenciado Ayala Vega ofreció información inconsistente que refleja la falsedad de sus aseveraciones. Posteriormente, presentó ante el foro primario hechos que no concordaban con la realidad al solicitar la regrabación de los procedimientos justificando que existía una apelación ante esta Curia.

El licenciado Ayala Vega fue inconsistente en su defensa y se valió de artificios para defenderse contra la querella. Primeramente, el letrado insistió en que el quejoso faltaba a la verdad y afirmó haber presentado la apelación para luego justificar su incumplimiento con el ardid de que ello respondía a una estrategia de litigio. Como si ello fuera poco, sostuvo que el adelanto de dinero constituyó un reembolso de los gastos incurridos en copias y transcripciones para una solicitud de reconsideración sin que justificaran los mismos y olvidando que en otras ocasiones sostuvo que ello fue el pago de los honorarios de la apelación que presentó.

Las actuaciones antes reseñadas, demuestran una falta a los valores de honradez y veracidad que debe tener la profesión legal en todo momento. El letrado proveyó información falsa que no se ajustó a la verdad al solicitar la grabación de los procedimientos ante el Tribunal de Primera Instancia cuando aseveró que había un recurso de apelación ante este Tribunal. También desplegó una actitud indigna al presentar su defensa a base de la relación de hechos que entendió mejor le favorecían sin importar la veracidad de éstos. Tal conducta constituyó violaciones a los Cánones 18 y 35 del Código de Ética Profesional, *supra*.

De otra parte, el letrado retuvo el anticipo pagado por el quejoso por gestiones que no realizó. No fue hasta el 2009 que devolvió éstos en un alegado acto de buena fe. La retención del dinero adelantado configuró una infracción a los Cánones 20 y 23 del Código de Ética Profesional, *supra*, ya que el letrado retuvo dinero por servicios que no prestó y faltó a su deber de fiducia y honradez absoluta. El licenciado Ayala Vega se vio obligado a devolver el dinero recibido debido a las insistencias del quejoso con relación al trámite de su queja. No obstante, en ningún momento entendió que no era merecedor del mismo, sino que aseveró que la devolución era un acto de buena fe.

Por último, las actuaciones del letrado no resultan dignas ni reflejan el honor de la profesión de la abogacía. La conducta desplegada expone que el abogado no

actuó con la seriedad y la responsabilidad que se requiere para la vocación de nuestra profesión. Todo ello en clara violación al Canon 38 del Código de Ética Profesional, *supra.*

III

Al determinar la sanción disciplinaria que habrá de imponerse a un abogado que haya incurrido en conducta contraria a los Cánones de Ética Profesional, *supra,* puede tomarse en consideración la buena reputación del abogado en la comunidad; su historial previo; si es su primera falta; si ninguna parte se ha visto perjudicada; si se trata de conducta aislada; el ánimo de lucro que medió en su actuación; si hubo resarcimiento al cliente y cualesquiera otras consideraciones, ya sean atenuantes o agravantes, que medien a tenor con los hechos. In re Hernández González, res. 12 de junio de 2013, 2013 T.S.P.R. 70; 188 D.P.R.___ (2013).

En el caso de autos, resulta evidente que se configura la circunstancia agravante de que la falta de diligencia para cumplir con la encomienda profesional en cuanto al tracto apelativo tuvo el efecto de que la sentencia que le fuera impuesta advino final y firme, sin que el imputado pudiera efectivamente revisarla. Igualmente, existe el agravante de que el licenciado Ayala Vega negó su responsabilidad al sostener hechos huérfanos de prueba y en sí mismos contradictorios. Tampoco ha mostrado arrepentimiento de clase alguna. A su vez, es de notar que el licenciado Ayala Vega en ningún momento pretendió

devolver el adelanto de dinero recibido por los trabajos no realizados y, por el contrario, siempre entendió que no tenía la responsabilidad de devolverlo, ya que adujo que lo hacía en un alegado acto de buena fe.

En definitiva, el licenciado Ayala Vega presentó alegaciones inconsistentes desde el 2007 hasta el presente con relación a la querella presentada. La consideración de las circunstancias expuestas demuestran que el letrado incurrió en conducta grave que lesiona la imagen de la profesión.

IV

Por los fundamentos expuestos, concluimos que el Lcdo. Héctor L. Ayala Vega violó los Cánones 18, 20, 23, 33, 35 y 38 del Código de Ética Profesional, *supra*. En consideración a la totalidad de las circunstancias particulares que rodean el caso de autos, se le suspende del ejercicio de la profesión por el término de dos años, a partir de la notificación de la presente opinión Per Curiam.

Se le impone el deber de notificar a todos sus clientes de su actual inhabilidad para seguir representándolos, devolverá los expedientes de los casos pendientes y cualesquiera honorarios recibidos por trabajos no realizados e informará oportunamente de su suspensión a los distintos foros judiciales y administrativos de Puerto Rico. El Alguacil de este Tribunal incautará inmediatamente la obra y el sello notarial del señor Ayala Vega para el trámite

correspondiente por el Director de la Oficina de Inspección de Notarías. Además, deberá certificarnos en treinta días el cumplimiento de estos deberes.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Héctor L. Ayala Vega            CP-2011-014

SENTENCIA

San Juan, Puerto Rico, a 10 de octubre de 2013.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia, se suspende al Lic. Héctor L. Ayala Vega del ejercicio de la profesión por el término de dos años, a partir de la notificación de la presente opinión Per Curiam.

Se le impone el deber de notificar a todos sus clientes de su actual inhabilidad para seguir representándolos, devolverá los expedientes de los casos pendientes y cualesquiera honorarios recibidos por trabajos no realizados e informará oportunamente de su suspensión a los distintos foros judiciales y administrativos de Puerto Rico. El Alguacil de este Tribunal incautará inmediatamente la obra y el sello notarial del señor Ayala Vega para el trámite correspondiente por el Director de la Oficina de Inspección de Notarías. Además, deberá certificarnos en treinta días el cumplimiento de estos deberes.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal. La Juez Asociada señora Rodríguez Rodríguez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo